IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ELLIOT KYLES,**

          **Petitioner,**

      v.                        CASE NO. 09-3266-RDR

**(fnu) CHESTER,**
**Warden, USP-Leavenworth,**

          **Respondent.**

### MEMORANDUM AND ORDER

This petition for writ of habeas corpus, 28 U.S.C. § 2241, is before the court upon respondent's Motion to Dismiss (Doc. 7), petitioner's Motion for Court to Accept Prior Motion and Document (Doc. 8), petitioner's Traverse (Doc. 10) and respondent's responses (Docs. 9, 10), and is ready for decision. Having considered all materials in the file, the court finds as follows.

Mr. Kyles is a federal prisoner serving a sixty-month term of imprisonment for Conspiracy to Distribute Five Grams or More of Cocaine Base and Possession of a Firearm in Relation to a Drug Trafficking Crime. He has a projected release date of December 20, 2011, via good conduct time release.

Petitioner requested from federal prison officials a determination of the amount of time he would spend in a halfway house[1] under the Second Chance Act, 18 U.S.C. § 3624(c)(SCA),[2] long

---

[1] Apparently, the BOP now refers to a halfway house or a CCC as a Residential Re-entry Center or RRC. These three terms are used interchangeably herein.

[2] On April 9, 2008, the "Second Chance Act" of 2007 was signed into law and is now codified at 18 U.S.C. §§ 3621, 3624. The Act increased the duration of pre-release placement in an RRC from six to twelve months and required the BOP to make an individual determination that ensures that RRC placement be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C).

before the current BOP policy provided such a determination should be made in his case.³ He alleges that he spoke to someone on his Unit Team in May 2009; however, the precise date, procedure followed, and recipient of his initial request remain unclear. Petitioner challenges the BOP's handling of his request for a full 12-month placement under the SCA.

The court required Mr. Kyles to show exhaustion of administrative remedies. In response, he provided exhibits and asserted that he had fully exhausted. He provided a copy of a form completed by him entitled "Administrative Remedy - Informal Resolution," that is dated August 26, 2009. Therein, he requested to be considered for "up to 12 months placement in a halfway-house, as called for in 18 USC 3624, the Second Chance Act of 2007." He also stated that he suffers from acute diabetes and cited poor economic conditions as factors that supported his request. He was required to describe his attempts at informal resolution on this BP-8 form, and explained that he had "spoken to" his unit team "beginning around 5/01/2009, and made dozens of attempts to talk to any member," but his efforts were ignored and his request for CCC placement beyond six months was "summarily denied."⁴ He asked for

---

³ See BOP Memorandum, Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007 (April 14, 2008) at 3 ("inmates must now be reviewed for pre-release RRC placements 17-19 months before their projected release dates."); see also Brown v. Rios, 2009 WL 5030768, at * 6 (D.Minn, Dec. 14, 2009) (holding that it was sufficient for BOP to consider inmate seventeen to nineteen months prior to release for placement in RRC under Second Chance Act)(not cited as precedent).

⁴ 28 C.F.R. § 542.14(c)(4) provides in pertinent part: "The inmate shall . . . submit (the Informal Request) to the institution staff member designated to receive such Requests (ordinarily a correctional counselor)." Petitioner does not show that he initiated the administrative review process by submitting his Informal Resolution to the appropriate staff member. Neither party provides the Correctional Counselor's "Comments" or "Steps to Resolve" this informal request. The exhibits of both parties make clear that prison officials found petitioner had not properly completed the informal resolution step.

2

an individual evaluation and determination for placement of up to 12 months under the SCA. In addition, petitioner has provided a copy of a BP-9 Request for Administrative Remedy (AR), which he dated September 2009. The exact day of this request has been typed over and is not legible. In this AR, he protested that he had completed the BP-8 form and stated that he was appealing its denial. He then repeated his claims regarding his "unique health problems" and the economy. He also provides an exhibit of his appeal of "the denial of (his) BP-10 by the regional office" to the Central Office dated November 4, 2009. In this appeal, he again discounted an apparent finding that he had not completed the BP-8 informal resolution step, and asserted that the regional office "should have ruled on his appeal."

Respondent provides an affidavit consistently indicating that Mr. Kyles filed an "initial administrative remedy" requesting RRC placement at the institutional, regional, and central office levels, but each filing was "procedurally rejected" based upon the finding that petitioner's attempt at informal resolution had been incomplete.[5] Petitioner was additionally advised at the regional and central office levels that he would be considered for RRC placement in July 2010. Neither copies nor dates and summaries of these particular grievances and the responses to them are provided by respondent.

Other portions of the administrative record provided by

---

[5] Under the established BOP administrative remedy process, an inmate is required to first attempt informal resolution of his claim, and if unsuccessful he must present the same claim, with the informal resolution attached, to the Warden. 28 C.F.R. § 542.14. If the Warden's response is unsatisfactory, the inmate must follow proper procedures to appeal to the Regional Office, and ultimately to the Central Office.

respondent demonstrate that Mr. Kyles submitted an administrative remedy clearly dated September 25, 2009, at the institutional level challenging the "categorical denial of (his) request for the 12 months of halfway house placement available under the Second Chance Act."[6] Therein, he requested that the institution approve the full 12-month placement based on his "unique circumstances." On February 12, 2010, the Warden responded that the remedy request had been received in his office on January 28, 2010,[7] and that "your unit team has neither denied nor approved RRC placement for you at this point of time." The Warden further responded that the unit team has "agreed to complete a RRC placement assessment in accordance with the Second Chance Act of 2007 in time for your next Program Review, scheduled for June of 2010, which is more than 18 months prior to your release date."[8] On February 22, 2010, petitioner submitted a Regional Appeal, complaining about the delay in responding to his BP-9, and asking for a CCC placement of 12 months rather than 6 months. He alleged that additional time at a CCC would allow him to better manage his diabetes. In a response dated March 31, 2010, the Regional Director stated that "your case will be evaluated at your

---

[6] A comparison of this AR attached to the Motion to Dismiss (Doc. 7-1) at 81, with the September 2009 AR exhibited by petitioner with his Supplement (Doc. 3) reveals that they are not the same document.

[7] Mr. Kyles filed this federal habeas corpus petition on December 9, 2009. Thus, at the time of filing, he clearly had not completed his round of administrative remedies that were not procedurally rejected.

[8] The response to this grievance made no mention of an incomplete informal resolution. Nor was it rejected on that basis. It thus appears that petitioner made an earlier or additional attempt to utilize his administrative remedies in which he did not include sufficient proof that he had first completed the informal resolution process. Respondent's statement thus appears correct that either after or while Kyles' institutional, regional and central office appeals were procedurally rejected, he started over, completed his informal resolution, and then refiled remedy requests at the institutional and the regional levels. The court assumes that respondent's exhibits are of this second round of attempts.

next Program Review in June 2010 to determine if you warrant additional RRC placement utilizing the five criteria under the eligibility provisions of the Act."

Respondent presents an affidavit that at the time the Motion to Dismiss was filed, Mr. Kyles had not appealed the response of the Regional Office dated March 31, 2010, to the Central Office. Obviously, the Central Office appeal he exhibits that is dated November 4, 2009, could not be the appeal of this subsequent decision by the Regional Director. Thus, respondent moved for dismissal of this action based upon petitioner's failure to fully exhaust administrative remedies.

The court is persuaded that respondent has provided records indicating that Mr. Kyles did not fully exhaust his administrative remedies by filing a Central Office appeal, and that petitioner has not met his burden of proving that administrative remedies were fully exhausted. See Clonce v. Presley, 640 F.2d 271, 273 (10th cir. 1981). However, the court finds that this action must be dismissed on a different ground.

Article III, § 2, of the Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This case or controversy requirement means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990); see Powell v. McCormack, 395 U.S. 486, 496 (1969). "[I]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and

must be dismissed." See Ailor v. City of Maynardville, 368 F.3d 587, 596 (6th Cir. 2004)(internal quotation omitted); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-699 (3rd Cir. 1996); Westmoreland v. National Transportation Safety Board, 833 F.2d 1461, 1462 (11th Cir. 1987)("When effective relief cannot be granted because of later events, the appeal must be dismissed as moot."). Because the exercise of judicial power under Article III of the Constitution depends on the existence of a live controversy, mootness is a jurisdictional issue. Lewis, 494 U.S. at 477. This Court lacks jurisdiction to consider any case that has "lost its character as a present, live controversy." Hall v. Beals, 396 U.S. 45, 48 (1969); Garcia v. Bd. of Educ., 520 F.3d 1116, 1123 (10th Cir. 2008); see also McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996)("[T]he existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."). "It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it'." Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992)(quoting Mills v. Green, 159 U.S. 651, 653 (1895)); Preiser v. Newkirk, 422 U.S. 395, 401 (1975)(a federal court no longer has jurisdiction over a case that has become moot).

Petitioner alleged in his federal habeas corpus petition that the BOP improperly failed or refused to determine his request for RRC placement until 17 to 19 months remained on his sentence, and claimed that this delay would prevent him from obtaining the full amount of placement available under the SCA. He argued that if his

6

request were not considered earlier, he would not be able to exhaust his administrative remedies and seek court action in time for placement in a RRC for a full 12 months. His request for relief is for this court to order the BOP to evaluate him for additional placement in a halfway house "prior to his reaching less than 12 months remaining on his sentence."

All that federal inmates like petitioner are entitled to receive is consideration for RRC placement based on an application of the factors set forth in 18 U.S.C. § 3621(b). See Brown v. Rios, 2009 WL 5030768, at * 8 (D. Minn. Dec. 14, 2009)("All that the Petitioner is entitled to, under [18 U.S.C. § 3624(c)] is an individualized evaluation of the appropriate RRC placement for his reentry, in light of the specific factors outlined in Title 18 U.S.C. § 3621(b)."); Reid v. Dewalt, 2009 WL 383404, at *6 (E.D.Ky. Feb. 11, 2009)(The "Second Chance Act does not . . . *mandate* that every federal prisoner is entitled to twelve-months, or even six-months, in pre-release CCC status."); Safa v. Phillips, 2008 WL 2275409, at *1 (N.D.W.Va. June 2, 2008) ("Inmates are not entitled to six months CCC placement, rather they are entitled to have their placement considered in accordance with the five factors enumerated in 18 U.S.C. § 3621(b).").[9] While Mr. Kyles did not receive as lengthy a placement as he desired, the record indicates that he was afforded BOP evaluation for RRC placement based upon the Section 3621(b) factors.[10] Prior to enactment of the Second Chance Act, the

---

[9] The unpublished cases in this opinion are not cited for their value as precedent.

[10] The record does not include a form "RRC placement worksheet," headed with "Review for Residential Reentry Center" and "Second Chance Act of 2007," as has been discussed by courts in some cases. However, the Program Review form, "Inmate Skills Development Plan," exhibited by respondent does indicate

7

Tenth Circuit addressed a similar claim by a federal inmate demanding placement in a CCC earlier than the date set by the BOP. In that case, Wedelstedt v. Wiley, 477 F.3d 1160, 1168 (10th Cir. 2007), the Circuit Court examined the earlier version of § 3624(c) and concluded that Wedelstedt's remedy was limited to the BOP being required to consider him for a transfer to a CCC for the last ten percent of his sentence under the § 3621(b) factors. See Garza v. Davis, 596 F.3d 1198, 1202-03 (10th Cir. 2010); see also Delpit v. Sanders, 2008 WL 5263825, *2 (C.D.Cal. 2008)(finding that petitioner's receipt of a CCC placement decision under the Second Chance Act and based on application of the five factors of Section 3621(b) rendered his habeas petition moot).

Here the record reflects the following. Petitioner's Unit Team prepared an Inmate Skills Development Plan for petitioner as part of his June 2010 Program Review, and his Unit Team met with him on June 25, 2010. The recommendation that Mr. Kyles receive RRC placement of 151-180 days is listed on page 11 of that Plan. Petitioner signed and dated the Inmate Skills Development Plan on June 25, 2010. The record therefore establishes, contrary to petitioner's bald denial, that after this action was filed and while it was pending, the Unit Team responsible for making petitioner's RRC placement decision recommended that he spend 151 to 180 days in an

---

consideration of petitioner's resources, post incarceration employment, family ties and relationships, health, planned residence upon release, education, work data, job skills, and numerous other factors relevant to petitioner's history and characteristics. Petitioner does not allege and apparently has not exhausted a claim that the requisite factors were not considered in his case. While a more distinct record might have been preferable, it is not essential given that petitioner's claim is not in regard to the statutory factors. See Miller v. Whitehead, 527 F.3d 752, 758 (8th Cir. 2008)(Noting that the responses were brief, the court held that "the statute does not require the BOP to provide prisoners with a detailed statutory analysis whenever a prisoner requests an immediate transfer to an RRC.").

RRC.  Thus, petitioner's claim that the BOP is unlawfully refusing to determine his request for a transfer to an RRC is moot.  See <u>Neal v. Sanders</u>, 2009 WL 4906535 at *6 (C.D. Cal. 2009)(and cases cited therein).  The court concludes that Mr. Kyles was granted the relief sought in this case on June 25, 2010, namely an individualized determination concerning his RRC placement.  It follows that there is no longer a "live" controversy.  Accordingly, this habeas corpus petition must be dismissed as moot.

To the extent that the petition might be construed as seeking an Order from the Court directing that Mr. Kyles be granted twelve months RRC placement, that is not relief that the court is authorized to grant.  See <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235, 251 (3rd Cir. 2005)("[T]hat the BOP may assign a prisoner to a CCC does not mean that it must.").  Congress has delegated to the BOP sole discretion in determining where federal inmates are housed.  See 18 U.S.C. § 3621(b); <u>Brown v. Atkinson</u>, 2010 WL 3659634 at *4 (S.D. Fla. June 11, 2010)(and cases cited therein).  Moreover, § 3624(c) does not entitle prisoners to a twelve-month placement in a CCC.  <u>Bun v. Wiley</u>, 351 Fed.Appx. 267, 268 (10th Cir. 2009).

Finally the court notes that petitioner has alleged no facts suggesting that the BOP acted outside its statutory authority or that it failed to apply its own current policies in determining his RRC placement time. Following enactment of the Second Chance Act of 2007, the BOP issued two "interpretive memoranda" that provided "guidance to its staff regarding the proper implementation of the amended statutes while BOP was undergoing formal rulemaking to revise more permanently its regulations." <u>Garza</u>, 596 F.3d at 1202. The Tenth Circuit Court of Appeals has described those memoranda as


9

follows:

> The first memorandum, issued on April 14, 2008, addressed the statutory changes following the Second Chance Act of 2007, emphasizing that the pre-release time frame for RRC and CCC had been increased to twelve months and that there was no percentage limitation on time to be served. Additionally, the memorandum instructed staff that they must make prerelease placement decisions "on an individual basis in every inmate's case" and that "the Bureau's categorical timeframe limitations on pre-release community confinement . . . are no longer applicable, and must no longer be followed." Staff were instructed to review inmates for pre-release placements at an earlier time, e.g., seventeen to nineteen months before their projected release dates, and to consider pre-release inmates on an individual basis using the five factors from 18 U.S.C. § 3621(b). However, the memorandum also stated that "[w]hile the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less" and that "[s]hould staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager."
>
> The second BOP memorandum, issued on November 14, 2008, addressed inmate requests for transfer to RRCs when more than twelve months remained from their projected release date (that is, non-prerelease inmates). In relevant part, the memorandum instructed staff that they could not automatically deny a non-pre-release inmate's request for pre-release transfer, but must give each request individualized consideration. However, if an inmate were to request transfer prior to the pre-release time frame of twelve months, although staff must individually consider the request, they were instructed that there was "no need" to perform immediately the statutorily prescribed individualized review. Rather, the inmate should be informed that the request would be fully reviewed in conjunction with the next scheduled Program Review. Staff were cautioned that they should not inform the inmate that he or she was ineligible for transfer because "[t]elling an inmate that he/she is ineligible for RRC placement is the same as automatically denying the inmate from even being considered for such placement, and is not in accord with Bureau Policy." The second memorandum also stated that "[a]n RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs."

Id. at 1202-03 (internal citations omitted). The BOP memoranda

"clearly indicate" that "the BOP recognizes its authority to place inmates in RRCs and/or CCCs for periods of time exceeding six months" and do not reflect "a policy of categorical denial." See Ciocchetti v. Wiley, 358 Fed.Appx. 20, 24 (10th Cir. 2009); Garza, 596 F.3d at 1204. As the court reasoned in Neal v. Sanders, it is not the court's function to reweigh the statutory factors and to make a different placement decision than that made by the BOP. Neal v. Sanders, 2009 WL 4906535 at *7.

In sum, petitioner's claims that the BOP acted improperly in delaying its review and determination regarding his request for RRC placement under § 3624(c) and that he is entitled to consideration of his request are moot. Any claim he may have regarding the BOP's decision in June 2010 that his RRC placement would be for 151 to 180 days is not shown to have been exhausted. In the event that facts come to light indicating Mr. Kyles' review did not include consideration for placement in a RRC for up to twelve (12) months or did not include a consideration of the relevant statutory factors, he must exhaust administrative remedies on that different set of facts before seeking relief in federal court. The court concludes that Mr. Kyles has not met his burden of establishing that his custody violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

**IT IS THEREFORE ORDERED** that this action is dismissed as moot, without prejudice.

**IT IS FURTHER ORDERED** that petitioner's Motion for Court to Accept Prior Motion and Document (Doc. 8) is granted, and defendant's Motion to Dismiss (Doc. 7), for failure to exhaust

administrative remedies and because the issue raised in not ripe for judicial review, is denied as moot.

**IT IS SO ORDERED.**

DATED:  This 9th day of March, 2011, at Topeka, Kansas.


                                    s/RICHARD D. ROGERS
                                    United States District Judge